Rogers v. Traphagen.

---

CHARLES E. ROGERS et al., appellants,

*v.*

HENRY TRAPHAGEN, administrator, respondent.

---

HENRY TRAPHAGEN, administrator, appellant,

*v.*

CHARLES E. ROGERS, respondent.

1. An administrator, after settling his final account, held in his hands the distributive shares of two infants for whom (no guardians having been appointed) he had made disbursements from time to time, both before and after the passing of his final account.

Rogers v. Traphagen.

2. On a bill filed by the children after arriving at their majority, against the administrator for an account, it is held that while the payments should regularly have been made only to a guardian, yet in the absence of bad faith, such disbursements as would have been approved, had they been made by a guardian of the infants, will be allowed to the administrator.

On appeal from a decree advised by Joseph D. Bedle, Esq., advisory master, who filed the following conclusions:

I think the jurisdiction of the court of chancery to deal with this case equitably is clear, although no question is raised upon it.

The claim of the complainants is subject to equitable adjustment and control.

The administrator has kept his accounts in such a way, and mingled the funds of the estate with his own, in such manner as to make the examination of the case very difficult, and for that reason he is entitled to no liberal consideration in a court of equity. Still it is not the right of the complainants in any way, that they should profit by his errors.

I detect no actual fraud in the management of the estate. The management has been loose, and, from a mistaken judgment, palpably so; yet in the settlement of the equities and the subjection of himself to proper liability the object of the court should be to do equity to these complainants, to give them what they are fully entitled to under the circumstances.

Although the management has been loose, yet in some respects, I think it may be said that it is not unlikely that they will get more out of the estate than if the management had been better.

If there had been a guardian appointed for these minors, who were very young when their father died, and the expenses of the guardianship, and the disbursements of the moneys through the hands of a guardian, it is not unlikely that these complainants would have received less than they will receive now. The view I take of it is that they should not profit by the mistakes and looseness of management of the administrator, but that they should, by an equitable adjustment, be entitled fairly to what their interests require in this estate. Now I will take up these exceptions: In regard to the first, second, and the seventh and eighth,

Rogers *v.* Traphagen.

these being the exceptions applicable to the two children and concerning the claim on the part of the administrator for board after the death of the father and up to the final accounting, and also for clothing, my judgment is that the final account settled May 6th, 1872, does not conclude the allowance of these claims. It would not have been proper to include in the final account any of these matters. Whatever advancements have been made to those who are entitled to a distributive share of the estate are not proper matters to go into the final account at all.

The account must be settled without reference to any advance, and the fact of an advancement preceding the final account does not conclude an allowance therefor.

There is an error in a good many that the final account takes in all transactions previous to it. These moneys that are advances on the distributive interest, are to be taken out of the balance when settled in the final account; and therefore I do not regard that these exceptants are concluded by the final account, and do not see any reason why these allowances should not be made up to the final account as claimed for the board of the children and the clothing. They were of tender years, and the amount claimed seems to be not unreasonable both for the board and clothing.

I therefore shall allow these exceptions, viz., the first, second, seventh and eighth, and these amounts should be taken right out of the balance fund in the final account. They need not disturb the system of calculating interest by the master, except only so far as they will reduce the amount that he starts with.

Now that brings us to the third and ninth exceptions. I shall disallow these exceptions. The facts do not warrant them.

Now I take up the fourth exception. Speaking generally, the master has stopped any allowances on the account of Charles since 1880, or rather there are no allowances after that time, being about the time of his marriage. In the account of the administrator in regard to Charles, there is a gap between November 22d, 1879, and April 29th, 1881, and this exception is to the non-allowance of a claim for groceries between that date, April 29th, 1881, and July 1st, 1884. The question is as

to whether that exception should be allowed during the time the mother was living with Charles and his wife, Charles having been married in or about the month of October, 1880. The evidence is clear that Charles got these groceries. He admits it, and it is evident that they were obtained through the instrumentality of the mother.

I have examined this testimony several times on this point, and the conclusion that I have reached is that those groceries, so much a month, were actually received by Charles, and there is no controversy in the case about the facts with reference to it. I therefore think that he should be charged with them; I do not see any reason why he should not be. He was then married. He had his wife, and they were living together; the mother was living with them, and he got the benefit of these groceries. I think the equities are all most decidedly in favor of allowing this claim.

I now take up the tenth exception and also the eleventh. The tenth exception is a claim for rent from March 1st, 1879, to March 1st, 1882, at $10 per month. The eleventh exception is a claim for rent from March 1st, 1882, to July 1st, 1884, at $10 per month. Emma became of age October 5th, 1881. The allowances on the account of Emma cease, under the master's report, September 6th, 1877, which I understand to be the date of her marriage. I have concluded not to make any allowance for rent previous to October 5th, 1881, the time she became of age, and my reason is that although there are some equities in favor of it, from the fact that she did, with her husband, actually occupy this house, yet I do not think that, in the light of her minority and the fact of her having a husband, I should make this allowance. I think that the administrator should be at whatever loss he has sustained by reason of that; but the proof is, in substance—and there don't seem to be any controversy in the testimony about it—that she was there occupying these premises under an understanding that they were to be paid for out of her share of the estate.

The administrator swears to that, and she herself admits it distinctly, in forms of expression like this: that she had re-

Rogers *v.* Traphagen.

ceived nothing except rent. She repeats that several times over and over again, and it is quite clear, from the general run of her testimony, that she regarded herself as in there under an arrangement that she should meet the rent out of her estate. Now, when she became of age, I do not see any difficulty in her making such an arrangement, and I think the facts warrant my deciding that that was the fact, and I do not feel willing to deprive the administrator of his claim for that rent under those circumstances, when she, an adult, taking it from the time of her becoming of age, was occupying this property under an understanding that the rent should be satisfied out of her distributive share of that estate.

I have read the testimony several times upon that point, both the testimony of Emma and Mr. Traphagen, and that is the conclusion which irresistibly forces itself upon me. I therefore think that, notwithstanding her husband, but treating her as of age October 5th, 1881, and she occupying the premises and getting the benefit of it, under an arrangement that it should come out of her distributive share, the administrator should have an allowance for it here.

These two exceptions then will be allowed, so far as they cover the rent from October 5th, 1881, the time that she became of age, up to the end of the claim for rent. These tenth and eleventh exceptions both have reference to Emma, and they are allowed as stated.

The twelfth exception is disallowed.

The fifteenth exception, which is the claim for commissions, is disallowed.

Now, the other exceptions cover the question of interest. In regard to interest, as I understand the mode adopted by the master, up to the period of time when he ceased to make allowances, he calculated interest at the end of each year, deducting the allowances or payments, commencing six months after the final accounting. I think that that principle is right, but, so far as any question of compounding after that is concerned, I disallow it.

Practically, a re-adjustment of the account will result in this :

These allowances that are now made cover a later period of time, and up to near the commencement of the suit. My decision is that the same system of calculation adopted by the master during the period of time that he made allowances be continued during the whole period covered by the allowances now made by me, and that the balance be not compounded, but draw only simple interest. And my reason for that is this: that the allowances or payments were such that it would be unjust to adopt any compound system.

The amount of the interest was not such as to require the administrator to keep it invested under the penalty of having it compounded against him, and besides, the payments will absorb the interest.

The administrator is to pay the costs out of his own pocket.

*Mr. S. B. Ransom,* for Henry Traphagen, administrator.

*Messrs. Parmley, Olendorf & Fisk,* for Charles E. Rogers.

The opinion of the court was delivered by

REED, J.

These are cross-appeals from a final decree, fixing the extent of the liability of Henry Traphagen as administrator of Charles E. Rogers.

Charles E. Rogers died December 7th, 1870, leaving a widow and two children, Charles E. and Emma A.

Letters of administration were granted to Henry Traphagen on December 24th, 1870.

On May 6th, 1872, Mr. Traphagen filed his final account as administrator with the surrogate of the county of Hudson, which was duly passed, showing a balance in his hands of $6,897.54.

He paid to the widow the one-third part of said balance, and held the children's portions of $2,132.51 each in his own hands, no guardian of the estate of the children having been appointed. The administrator, at different times, and in various ways, made payments of money to, and for the benefit of the children up to

the time when they attained their majority. On February 29th, 1884, the children filed their bill in the court of chancery for an account, and on October 15th, 1884, an account was ordered.

The master to whom the matter was referred, reported that there was due to the complainant Charles E. Rogers, the sum of $2,210.44, and to Emma A. the sum of $2,824.78.

Exceptions were, by Mr. Traphagen, filed to this report, which exceptions were referred to Advisory Master Bedle, who advised a decree allowing a number of the exceptions and disallowing others. From these conclusions of the master, appeals are taken by both parties to the suit.

In the consideration of the counter-contentions as to the amount of the allowances which should be permitted to the accountant, it is observable that the administrator made the disbursements to the infants and for their benefit, in a manner entirely irregular.

The functions of his office as administrator were entirely ended when he had filed his account and received the orphans court's approval thereof, with the one duty still subsisting, namely, that of paying over the balance in his hands to the persons by law entitled thereto. The persons entitled by law would have been the regularly appointed guardians of the infants. Payment by a trustee to an infant, without the sanction of the court, is irregular, and the trustee may be compelled to pay again to the infant when he comes of age. *Dagley* v. *Tolferry, 1 P. Wms. 285; Philips* v. *Paget, 2 Atk. 80; Davies* v. *Austen, 3 Bro. Ch. 178; Lee* v. *Brown, 4 Ves. 362; Furman* v. *Coe, 1 Cai. Cas. 96.*

The court sometimes, where the amount is small, for the purpose of saving the expense of taking out letters of guardianship, will direct a payment to a relative of the infant. *Farrance* v. *Viley, 21 L. J. (Ch.) 313; Ker* v. *Ruxton, 16 Jur. 491.* It is not, however, an inflexible rule that payment directly to an infant, without an order of the court which supervises the trust, results in a forfeiture of all benefit arising from the payment made.

Nor do I perceive any reason why, in the absence of bad faith on the part of the person making the payment, he should not

be allowed the benefit of all disbursements, which would clearly have been sanctioned by a court of equity had the administrator occupied the position of guardian.

His conduct should undoubtedly be scanned with the closest scrutiny, but if his acts appear to have been *bona fide,* and to have been attended by a benefit to the infant *cestui que trust,* then he is equitably entitled to the same degree of relief as if his conduct had been marked by the strictest conformity to the rules of legal or equitable procedure.

The advisory master in the present case recognized this equitable rule in dealing with the several questions presented for his consideration. Regarding the cause from the same point of view, the question is presented whether the court of chancery, in so dealing with the accounts, failed in certain particulars to reach correct results.

The counsel of Mr. Traphagen first insists that he should be allowed a bill for groceries which were delivered to Emma A., and paid for by Traphagen. Emma was at this time married, and living with her husband and her mother, although she was yet an infant. Her husband was presumably able to support her, and it was his duty to do so. The disallowance of this payment was correct.

Next, the counsel objects to the manner in which the advisory master dealt with a claim for the allowance of $324 for three years' rent.

It appears that Emma A. removed with her husband, in March, 1879, into a house belonging to Mr. Traphagen, and lived there till July 1st, 1884. Mr. Traphagen prayed an allowance for $9 per month rent, during a period from March 1st, 1879, to March 1st, 1882, and for $10 per month for the rest of the period of occupancy.

Emma arrived at her majority on October 5th, 1881.

The advisory master sustained the claim for an allowance for rent from the time Emma was of age, but disallowed it for the time previous to that event.

The disallowance is based upon the fact of her infancy and her marriage, and the consequent liability of her husband to

support her.   The allowance is grounded upon a contract made by her after she attained her majority, by which the rent was to be deducted from her distributive share.

I think there is in her testimony that which justified the conclusion of the master in finding the existence of such an agreement, and the law places no obstacles in the way of such a contract on the part of a married woman.  If the renting was to her, it was her own contract, and valid by the terms of our statute.

In regard to that part of the rent, the allowance of which was refused, it is urged that the master erred.   It is insisted that Emma, by remaining in possession of the premises after October 1st, 1881, ratified an agreement to pay rent made while she was an infant.  The position of Emma is likened to that of a person who has purchased land while an infant and remains in possession when of age; and of one who, having taken a lease for years, remains in possession after attaining his majority.   But whatever may be the effect of the retention of possession by an adult of the subject of his infantile contract of sale or letting, it is apparent that the facts in the present case bear no resemblance to either of the samples.

There was no contract of letting for a term of years proven, which expired after the arrival of October 5th.   There is nothing to show the terms under which she agreed to hold the house.

Mr. Traphagen says that he charged so much a month, and she says that she received nothing from Mr. Traphagen but rent.

Upon this slender foundation is built up an agreement to pay rent accruing after she arrived at her majority, but certainly no contract for any specific time can be deduced from it.

The agreement to pay after arriving at maturity seems to be merely an admission of a liability to pay for a previous use and occupation.   Certainly the possession of Emma cannot be said to have been the ratification of any precedent contract.

It is also a ground of objection that there is a compounding of interest, against the express views of the advisory master, who ordered simple interest.   On the other hand, it is objected

that the part of the decree which directs that there shall be no compounding, is erroneous.

The advisory master ordered yearly rests, so long as there were payments made by Mr. Traphagen, and interest to be computed upon the balances; but he directed that only simple interest should be computed after the disbursements ceased.

I am not clear but this was an equitable adjustment of this branch of the case under all the circumstances, and that it should stand.

The counsel for the complainants below, upon their appeal, insists that there was error in permitting the administrator to claim an allowance for disbursements made to the infants previous to the settlement as administrator. It is said that the presumption is conclusive that such payments were included in that account.

But there is no such presumption, because such payments would have no legitimate place in such accounting. They can be regarded as payments in advance of a part of the distributive shares in the estate, and can be deducted whenever such shares are claimed. As the claims are made by way of this bill for an accounting, it is the right of the defendant to claim the benefit of any legal disbursements to the distributees, made at any time upon the credit of the future shares to be distributed.

There is a claim allowed, however, about which I have had some doubt.

It is a sum of $294.03, claimed to have been paid to the mother of Charles, for his benefit, by groceries delivered to her, and charged to Mr. Traphagen.

At this time Charles was married, and was earning wages, and his mother was living with him. The groceries, Charles says, he got the benefit of. This amount was all that he received during this period from the administrator. It seems to have been a great assistance to him. It was not in excess of the interest charged against the administrator during that period, so no inroads were made upon the principal of the infant's estate. I think if a guardian had made this expenditure it would receive

the sanction of the supervising court.   So I incline to an allowance of this item.

I think the conclusions reached by the advisory master in other respects should stand, and that the decree below should be affirmed, without costs:

<em>Decree unanimously affirmed.</em>